FIRST NATIONAL BANK OF AKRON, APPELLEE, *v.* THE OHIO CASUALTY INS. CO., APPELLANT.

(No. 4318—Decided March 18, 1953.)

*Messrs. Wise, Roetzel, Maxon, Kelly & Andress,* for appellee.

*Messrs. Slabaugh, Guinther & Pflueger,* for appellant.

DOYLE, P. J.   The action in the Court of Common Pleas of Summit County was commenced by the First National Bank of Akron against The Ohio Casualty Insurance Company. The claim was made that, under a contract of indemnity insurance, the bank was entitled to have legal services provided and paid

by the insurance company in a suit directed against it for personal injuries growing out of claims of negligence. It appears that the bank retained and paid its own attorneys, who successfully defended the litigation through several courts, including the Supreme Court of Ohio. The present action sought to recover from the insurance company the amount paid for the services.

A judgment in the amount of $4,814.33, with interest, was entered in the trial court. Pursuant to the overruling of a motion for a new trial, appeal was perfected to this court. Error is assigned as follows:

"* * * the judgment should have been in favor of the defendant, Ohio Casualty Insurance Co., instead of in favor of the plaintiff, First National Bank."

To this question we now direct attention.

The First National Bank of Akron holds the fee simple title to real property in Akron known as the Portage Hotel. The title is held in trust for the benefit of land trust certificate owners. Under an indenture of lease, the property was conveyed to the Portage Bereal Company, which operated and now operates a hotel thereon and therein. The hotel operating company secured, from The Ohio Casualty Insurance Company, a policy of public liability insurance, which the bank claims constituted a contract to defend it from claimed tort liability through certain provisions contained therein.

It appears that in the month of June, 1946, Carrie R. Kauffman, an employee of the Portage Bereal Company (lessee), was injured while riding on an elevator in the hotel and in the premises described in the policy of insurance. She brought suit against the lessor bank for personal injuries, grounded on allegations of negligence. Upon trial in the Court of Common Pleas of Summit County, judgment was entered against her. This judgment was affirmed on appeal by this Court of Appeals, and, on further appeal to the Supreme Court of Ohio, the judgment of the Court of Appeals was affirmed. (*Kauffman* v. *First-Central Trust Co., Trustee* [predecessor of the First National Bank of Akron], 151 Ohio St., 298, 85 N. E. [2d], 796.)

When the action for personal injuries was filed against the bank, and after summons was served, Mr. C. G. Roetzel, one of

the attorneys for the bank, discussed the question of the defense of the action with a representative of the insurance company. The attorney was told that contact would be made with the office of the insurance company. Later the attorney was told that the company would recognize coverage; would defend the case; and requested that the summons be sent to The Ohio Casualty Insurance Company, Hanna Building, Cleveland, Ohio. This request for the summons was met, and, in addition, a copy of the petition was mailed, with a request from the bank that it be advised "that the action will be afforded the protection provided by your policy * * *."

Although this letter was not answered, the insurance company commenced an investigation and retained counsel to defend the bank. The counsel so retained thereupon filed, on behalf of the bank, various pleadings, argued for and against demurrers, took depositions, and finally agreed with counsel for the plaintiff that the case should be specially assigned for trial on a day certain—about fifty days in the future.

On the fifth day after this agreement, the insurance company notified the bank that it would no longer defend, for the reason that the policy of insurance did not cover the action brought or the claim made by Carrie R. Kauffman. Thereupon the bank, by letter dated December 15, 1947, advised the insurance company: (1) that it was bound under its policy to furnish defense and to pay any adverse judgment which might be rendered; (2) that by its course of conduct it had waived any right to deny coverage; and (3) that it was estopped from claiming that it had no obligation to defend or to pay any adverse judgment.

Several days later, the insurance company restated its position in reference to the defense; whereupon the bank engaged its own counsel, who successfully defended the case through the Court of Common Pleas, the Court of Appeals, and the Supreme Court.

No issue is made of the reasonableness of the attorney fees and expenses.

There is but one question for this court to determine. It is: Did the pleadings bring the action within the coverage of the policy? If they did, the insurance company was required

to defend, regardless of its ultimate liability to the insured. *Socony-Vacuum Oil Co.* v. *Continental Casualty Co.,* 144 Ohio St., 382, 59 N. E. (2d), 199.

At the outset, we think it well to bring into the opinion pertinent parts of the policy. It will be noted that the policy was issued to The Portage Bereal Company (the lessee operator of the hotel), with a rider "extending" the insurance to the bank (the lessor of the property).

Terms in the policy:

"Declarations.

"1. Name of Insured—The Portage Bereal Company.

"Address of Insured—Akron, Summit, Ohio.
          (Town)   (County) (State)

"The named insured is—corporation and trustee.

"The business of the named insured is—hotel.

"* * *

"Insuring Agreements.

"I. Coverage A—Bodily Injury Liability.

"To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law, or assumed by him under contract as defined herein, for damages, including damages for care and loss of services, because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person or persons and caused by accident.

"* * *

"Exclusions.

"This policy does not apply:

"* * *

"(d) Under coverage A, except with respect to liability assumed under contract covered by this policy, to bodily injury to or sickness, disease or death of any employee of the insured while engaged in the business, other than domestic employment, of the insured, or to any obligation for which the insured may be held liable under any workmen's compensation law * * *."

The "rider," as hereinbefore noted, appears as follows:

"It is agreed that such insurance as is afforded under this policy shall be extended to apply to the interest of The First-

Central Trust Company, Trustee, but only as respects their interest as trustee for the land certificate holders in connection with the premises and elevators at the northwest corner of Main and Market Streets, Akron, Ohio.''

In addition, the policy contains the following (under ''Insuring Agreements''):

''II. Defense, Settlement, Supplementary Payments.

''It is further agreed that as respects insurance afforded by this policy the company shall

''(a) Defend in his name and behalf any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company shall have the right to make such investigation, negotiation and settlement of any claim or suit as may be deemed expedient by the company.''

We think the Supreme Court, in its published opinion (151 Ohio St., 298, at p. 300), sufficiently summarized, for our purposes, the petition. The summary is:

''* * * Mrs. Kauffman brought this action in the Court of Common Pleas of Summit County against The First-Central Trust Company, as trustee, the lessor of the premises occupied by the Portage Hotel, to recover damages for * * * personal injuries, upon the claim that the lessor had violated certain duties of a protective nature, imposed upon it by statute and by pleaded ordinances of the city of Akron, in permitting the placement and maintenance of the inadequate wooden gate at the basement entrance to the elevator cage, and that such violation of the imposed duties was a direct and proximate cause of the injuries * * *.''

In addition to the above summary, we quote a specific allegation in the second amended petition, with emphasis on the complainant's position as an ''employee.'' This language becomes most important later.

''Plaintiff alleges that on or about the 29th day of June, 1946, at approximately 1 o'clock p. m., she was an *employee* of the said The Portage Bereal Company; that at the time aforesaid she proceeded to enter, as a passenger, the carriage of an elevator designed, installed and used for the carrying of passengers at the place where entrance to said carriage is regularly

obtained in the basement of the said the Portage Hotel.''
(Italics ours.)

It appears, we think, that the petition of the plaintiff Kauffman stated a cause of action against the bank which was covered by the policy, even though the bank's protection came only under the insurance ''extended'' in the rider. The bank as such was not a named insured. It was covered only by extended insurance.

Proceeding now to the time when the insurance company withdrew from the defense and its reasons therefor, we find that, in one of the defenses in the answer filed by the insurance company's attorney on behalf of the bank, the allegation was made that the claimant (Kauffman) was an employee of the Portage Bereal Company and had accepted and received benefits under the Workmen's Compensation Act. To this allegation the plaintiff Kauffman filed a demurrer, which was sustained by the court. At this point in the proceedings, the attorneys employed by the insurance company withdrew from the case, for the reason, as here stated by them, that the demurrer filed by the plaintiff ''was an admission of the allegation that she was an employee of the named insured, Portage Bereal Company, and that she had accepted and received benefits under the Workmen's Compansation Act.'' Specifically, it was claimed by the insurance company that the plaintiff's pleadings (the petition and the demurrer to the answer) ''made precise and complete allegations that:

''(1) Kauffman was an employee of Portage Bereal Company, the named insured;

''(2) She was injured while an employee;

''(3) She was injured upon the premises of her employer;

''(4) She was injured while she was getting on the elevator as an employee of Portage Bereal Company;

''(5) She applied for and received compensation from the Industrial Commission of Ohio because of the injury received by her upon the premises while an employee of Portage Bereal Company and engaged in its business.''

If the claim of the insurance company in its appraisement of the legal effect of the pleading (the demurrer) is right, then it seems obvious that the pleadings show no coverage under the

terms of the policy, inasmuch as the policy did not insure the bank as a "named insured," but extended to the bank only the insurance which was afforded by the policy to Portage Bereal Company, the named insured; and the coverage to the Portage Bereal Company excluded, under (d) above, injury to an employee of the Portage Bereal Company "while engaged in the business," or "any obligation for which the insured may be held liable under any workmen's compensation law"; and if the insurance company was not obligated to defend a suit against the named insured (the Portage Bereal Company), it was not obligated to defend a suit against the bank, to which the insurance given the Portage Bereal Company was extended.

We do not, however, agree with the claim of the insurance company with respect to the legal effect of the demurrer.

The office of a demurrer is not and never has been used to create allegations or admissions of fact in pleadings. It is not an acknowledgement of facts. The subject is treated in this state in *Seibert, Recr., v. Herring,* 121 Ohio St., 181, at p. 185, 167 N. E., 383, where the Supreme Court adopted the following statement of law from 21 Ruling Case Law, Pleadings, Section 70 (in part):

" 'The admission arising from a demurrer is in no sense to be regarded as an acknowledgement, or used as evidence, or considered as equivalent to evidence. It merely denies the legal sufficiency of the facts alleged, and hence such facts are said to be admitted, and, impliedly, they are admitted, but solely for the purpose of testing their sufficiency in law. * * *' "

The substance of this text now appears in 41 American Jurisprudence, Pleadings, Section 239.

And in 71 Corpus Juris Secundum, Pleadings, Section 261 g, the rule is stated to be that "a demurrer to an answer does not constitute such an admission of the facts therein alleged as to make them a part of the petition and thus render the petition bad."

This court, therefore, in passing on the legal effect of the demurrer in the instant case, rules that the demurrer did not constitute an admission of fact in the pleadings, nor was it the equivalent of an admission of fact, which may be employed per se to relieve a defendant from a contractual obligation to de-

fend a suit, under the terms of an indemnity policy. The demurrer admitted the facts *"solely for the purpose of testing their sufficiency"* as a defense to the petition, and for no other purpose.

As noted above, the insurance company defended the bank until the ruling on the demurrer. It apparently believed that the petition was sufficient to invoke its contractual obligation to defend. This court sustains this belief, but rules further that, when it withdrew from continuing the defense, it violated its contractual obligation, even though the claim was groundless, and even though there was no ultimate liability to pay because of the claimant's coverage under the workmen's compensation law. Nowhere in the pleadings was there shown to exist facts which would exclude coverage under "(d)" above, nor to exclude coverage under any contractual exemption.

In brief summary of the thoughts expressed, we determine that:

1. The exclusion in the insurance policy was applicable to *employees* of the Portage Bereal Company, and only to those employees who, at the time of injury, were *"engaged in the business"* of the said company, or "to any obligation for which the insured may be held liable under any workmen's compensation law." (Emphasis ours.)

2. The allegations in the pleadings of the injured claimant, Carrie R. Kauffman, did not state that she came within the exclusions noted above. It was not pleaded that she was injured while engaged in the business of her employer, nor that she was entitled to receive or did receive workmen's compensation.

3. The mere filing of a demurrer by the plaintiff and the later sustaining of the same by the court, when the demurrer was directed to an allegation in an answer filed by the insurance company's lawyers while representing the defendant under the terms of an indemnity policy, did not constitute an admission by the plaintiff of the facts alleged in the answer—in the instant case, of the allegation in the answer that she had received workmen's compensation.

4. A demurrer impliedly admits allegations in a pleading *for the sole purpose of testing their sufficiency in law and for no other purpose.*

As stated, counsel for the insurance company withdrew from the case after the pleadings were all filed, and the case assigned for trial. The attendant circumstances and the reasons for withdrawal are stated in the brief of the insurance company as follows:

"Until the ruling of the court upon the demurrer conclusively showed that Carrie Kauffman admitted that she had received compensation from the Industrial Commission of Ohio as an employee of Portage Bereal Company, the company had continued to afford a defense to the bank. After the filing and sustaining of the demurrer which admitted the allegations in the bank's answer that she was an employee of Portage Bereal Company and that she had actually received workmen's compensation, the company determined not to continue to provide a defense for the bank."

We have determined that the pleadings did not make the admissions asserted as the reason for withdrawal. We have determined that the pleadings stated a case within the coverage of the rider giving extended insurance to the bank, and, although the suit was groundless, we conclude that the insurance company was required to make defense regardless of its ultimate liability. *Socony-Vacuum Oil Co.* v. *Continental Casualty Co., supra.* We further find that, because of a failure to comply with the provisions of the policy, the company which issued the contract is liable to the bank under its extended coverage "for the cost and expense of making its defense * * * notwithstanding [that] the suit was * * * defeated." *Bloom-Rosenblum-Kline Co.* v. *Union Indemnity Co.*, 121 Ohio St., 220, 167 N. E., 884.

Pursuant to examination of the various claimed errors, we find none prejudicial to the rights of the appellant. The judgment will, therefore, be affirmed.

*Judgment affirmed.*

STEVENS and HUNSICKER, JJ., concur.