*Stanley C. Coker,* for appellants.
*H. William Cohen,* for appellee.

## 61248. ROWE v. GEORGIA CASUALTY & SURETY COMPANY.

McMurray, Presiding Judge.

This case involves an action based upon insurance contracts insuring certain parties as to all sums which the insurer should become legally obligated to pay as damages because of bodily injury as defined in the contracts.

Jones Wood & Timber Corporation was in the wood and timber business during the period February 17, 1969, to February 17, 1970, in Paulding County, Georgia. Georgia Casualty & Surety Company issued two insurance policies to Jones Wood & Timber Corporation, the policy period in both policies being from February 17, 1969, to February 17, 1970.

In policy No. WC 918151 the insured was shown as "Jones Wood & Timber Corporation & Vendors while cutting wood for Jones Wood & Timber Corporation." The coverage under this policy was primarily for workmen's (workers') compensation but also for employer's liability, that is, to pay on behalf of the insured "all sums which the insured shall become legally obligated to pay as damages because of bodily injury by accident or disease, . . ." This policy, by endorsement, not only insured for workers' compensation the employees of the corporation but the employees of its contractors or subcontractors "performing work for the Employer," who would furnish the entire remuneration of all such employees so as to ascertain the premium. Under exclusions the policy did not apply under liability coverage "to any obligation for which the insured or any carrier as his insurer may be held liable under the workmen's compensation or occupational disease law of a state . . ." The term "assault and battery" under "Coverage B-Employers' Liability" was defined therein as "deemed an accident unless committed by or at the direction of the insured." Under limits of liability, the policy recognized that more than one insured was covered, hence this did "not operate to increase the limits of the company's liability." The substance of this policy was generally for workers' compensation

coverage although Coverage B did apply to "Employers' Liability."

Policy No. GLA 918157 covered the same period as the policy above and insured the corporation "Jones Wood and Timber Corporation" and "Other" shown by endorsement to be "Vendors while cutting wood for Jones Wood & Timber Corporation but solely for Coverages A & B Premises — Operations." This policy was a general liability and automobile liability policy.

We are concerned here with the insurance coverage for which the insured would "become legally obligated to pay as damages because of . . . bodily injury . . . to which this insurance applies, caused by an occurrence, . . ." Under exclusions this insurance did not apply "(g) to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, . . . benefits law . . ." and "(h) to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured; but this exclusion does not apply with respect to liability assumed by the insured under an incidental contract." Under the definition of "insured" the policy stated that insured means, among other definitions, "any person or organization qualifying as an insured in the 'Persons Insured' provision of the applicable insurance coverage. The insurance afforded *applies separately to each insured against whom claim is made or suit is brought, except with respect to the limits of the company's liability.*" (Emphasis supplied.) Each person named as an insured individual was insured "only with respect to the conduct of business of which he is the sole proprietor." This policy also excluded coverage for which the insured "or any carrier as his insurer may be held liable under any workmen's compensation, . . . benefits law . . ."

One of the employees of Jones Wood & Timber Corporation, Richard Rowe, a field man, was injured on October 10, 1969, at its wood yard in Dallas, Paulding County, Georgia. At that time Rowe contends that James Marvin Johnson, also known as Sam Johnson, was an independent timber cutter or vendor cutting timber for Jones Wood & Timber Corporation. One of Rowe's duties was to take care of the allotment to the producers or vendors as to the cutting of wood. Johnson, as one of the vendors or pulpwood producers, had been advised by Rowe as to what he was to cut with reference to timber purchased and to be cut from "Georgia Kraft's land." Other producers or vendors were to cut other areas and Johnson was to cut only his part or portion. Johnson had cut some timber from someone else's allotment, and Rowe stopped his crew from cutting. On the day in question when Rowe was hurt, Johnson entered the wood yard and told Rowe he was going to quit cutting wood for "Jones Wood & Timber." Whereupon Rowe said, "I told him if that's the way he felt

about it, that's okay." As he turned from Johnson, Johnson hit him in back of the head and he in turn grabbed Johnson. After holding him for about 30 seconds in which Johnson "was trying to get aloose," and Rowe "was trying to keep him from getting loose," and trying to contain him, Johnson "was trying to get loose. He might have been going to run." Rowe fell down with Johnson on top of him. Rowe hurt his ankle and leg. Rowe then applied for and received workers' compensation from "Jones Wood & Timber Company," his employer, and its insurer "Georgia Casualty & Surety Company" for the injury occurring October 10, 1969, that is, the accident and injury to his left leg which "arose out of and in the course of his employment" (taken from the award).

In November, 1970, Rowe filed suit against Sam Johnson in the Superior Court of Paulding County, seeking damages for personal injuries suffered in the incident of October 10, 1969. Rowe contends that before filing suit and within 30 days of filing of the suit his counsel conferred by telephone with the vice president in charge of claims at Georgia Casualty & Surety Company with reference to its obligation to provide coverage to Mr. Johnson in that suit. However, the insurer informed his counsel that no coverage existed and that it would not get involved in the lawsuit. Johnson later died on November 18, 1971, leaving an estate of approximately $1,000. On May 5, 1975, the county administrator was named administrator of the estate of Johnson and later substituted as a party in the lawsuit. This case was later tried, and a verdict and judgment in the amount of $95,000 plus interest was awarded to the plaintiff.

The present suit was then instituted by Richard Rowe against the insurer as defendant, Georgia Casualty & Surety Company based upon the two policies of insurance shown above attached to the lawsuit, contending the said Sam Johnson was an independent contractor "cutting timber for Jones Wood & Timber Corporation on the premises covered by the . . . policies . . ." attached. Plaintiff contends that as a result of the fall he received grievous and permanent bodily injuries for which he obtained a judgment against said Johnson. Having obtained said judgment he was entitled under the above mentioned policies and the law of Georgia to recover the amount of this judgment from the defendant Georgia Casualty & Surety Company inasmuch as the defendant was liable for such amount in that Johnson was an insured under the above mentioned policies, his acts which led to the plaintiff's injuries being within the scope of coverage of such policies. The defendant answered, in general denying the claim, admitting only jurisdiction and the existence of the two policies but not their contents because of their illegibility.

After discovery defendant moved for summary judgment. After a hearing based upon the pleadings, evidence and depositions and admissions, the court found that there was "no material issue of fact" and that defendant was entitled to a judgment in its favor as a matter of law. The motion for summary judgment was granted. Plaintiff appeals. *Held:*

The substance of the two policies has been reproduced in the record some three times, and while portions thereof are illegible, generally the contents, in particular the portions set out and quoted above, are admitted by all parties. We are thus concerned here as to whether or not the insurance policies (the plaintiff having collected workers' compensation by reason of his employment from one of the insureds under the policy, same having arisen out of and in the scope of his employment) bar plaintiff from collecting under the liability coverage of the policies insuring the decedent, Sam Johnson, an alleged vendor, at the time plaintiff contends he was injured by reason of the actions of Johnson. Defendant, as movant, contends the evidence fully discloses that as a matter of law, the various language bars this plaintiff from collecting under the policies of insurance. Consequently, we must scrutinize and examine the language of the policies to determine if the lower court properly construed the language to hold this action was barred under same.

1. Policy No. WC 918151, Coverage B, "Employers' Liability." We must ascertain if possible in order to affirm the trial court that the language of this policy is unambiguous and clear that upon the collection of workers' compensation, which incident or "accident" arose out of and in the course of plaintiff's employment, an admitted fact, this would bar recovery against the other named insured under this policy under its "Liability" coverage. Clearly the policy involves more than one insured, the employer of the plaintiff and the alleged vendor, Sam Johnson, deceased. Judgment was obtained against the decedent Johnson's estate by plaintiff. Plaintiff here seeks to collect under the policies of insurance insuring Johnson, if he is covered.

(a) The movant for summary judgment, while not admitting that there is coverage for the vendor, Sam Johnson, now deceased, or against his estate, as the judgment was so returned, seeks to show by the language of the policy that assault and battery was "committed by . . . the insured" (Johnson). Hence there was no accident within the terms of the insurance (as to this insured, admitting for the sake of argument that this vendor was covered). No doubt an assault occurred when Johnson struck the blow on plaintiff's head; but then the facts do not disclose with absolute clarity and certainty that the injury resulting from the fall was the result of the assault and battery.

Accordingly, an issue of fact remains, that is, if the alleged vendor is covered under the policy, which is not admitted although claimed by plaintiff.

A jury may determine that the injury resulted from the assault, but then, as at least "30 seconds" lapsed, after the assault, the plaintiff having seized the alleged culprit, Johnson, and he was then injured in the subsequent fall. This injury did not necessarily result from the assault. A factual issue remains for determination and does not demand a finding that it was the result of assault and battery, but from Johnson "trying to run," that is, "get loose," or to hit Rowe again or continue the altercation or he had ceased and desisted from further contact and was simply trying to get loose. The testimony does disclose that no further assault and battery occurred other than the first lick on plaintiff's head, unless a jury considers it a continuous occurrence, for Johnson then aided another in caring for plaintiff when it was determined plaintiff had broken his leg in the fall. A jury issue remains.

(b) Without any doubt the policy insured more than one insured, that is, the named corporation and its "Vendors while cutting wood" for the named corporation. Movant quickly acknowledges that an issue of fact remains as to whether the alleged vendor, Johnson, comes within the coverage of the contract at this point in time. But movant contends that even admitting there was coverage, the portions of the insurance policy excludes coverage. In such a case the burden is upon movant (insurer) to show the exclusion exists and that the facts of the case come within it. *Nationwide Mut. Fire Ins. Co. v. Collins,* 136 Ga. App. 671, 677 (222 SE2d 828); *Cotton States Mut. Ins. Co. v. American Mut. Liab. Ins. Co.,* 140 Ga. App. 657, 658 (3) (231 SE2d 553). Contrary to the latter case, however, the contract here is not unambiguous, and the exclusion is not clear.

(c) *First,* the language states that the policy does not apply as to "Employers' Liability" "to any obligation for which the insured or any carrier as his insurer [the defendant] may be held liable" for workers' compensation benefits (paid in this case to plaintiff). Which insured? The vendor, Johnson? Or, the corporation? It is admitted plaintiff received workers' compensation from the corporation/insurer as an employee, but not as an employee of the insured, Johnson; that is, if it be later determined as a fact Johnson was an insured vendor. Under the circumstances the policy must be construed most strongly against the insurer, who issued the policy, and more favorably toward the insured if consistent with the objects of the contract. *Johnson v. Mut. Life Ins. Co.,* 154 Ga. 653 (1, 2) (115 SE 14); *Davis v. United American Life Ins. Co.,* 215 Ga. 521, 527 (111 SE2d 488); *Fokes v. Interstate Life &c. Co.,* 59 Ga. App. 680

(2 SE2d 170); *Cotton States Mut. Ins. Co. v. Lee,* 119 Ga. App. 293 (1), 294 (166 SE2d 907); *Southeastern Fidelity Ins. Co. v. Fluellen,* 128 Ga. App. 877, 879 (198 SE2d 407); *Nationwide Mut. Fire Ins. Co. v. Collins,* 136 Ga. App. 671, 676, supra.

(d) *Second.* The cases cited in support of the insured are inapposite inasmuch as they differ on their facts. Such cases as *General Acc. Fire &c. Corp. v. Kimberly,* 61 Ga. App. 153 (6 SE2d 78); *Fireman's Fund Indem. Co. v. Mosaic Tile Co.,* 101 Ga. App. 701, 703—705 (115 SE2d 263); *Automatic Icemaker Co. v. Sun Ins. Office,* 110 Ga. App. 289 (1), 291 (138 SE2d 326); and *Nationwide Mut. Ins. Co. v. Peek,* 115 Ga. App. 678, 679 (1) (155 SE2d 661), are not controlling here. Those cases seek to distinguish between "primary insureds" and "additional insureds" under the policy so as to exclude liability "as against damages sustained among themselves." Here the policy is severable as to the different "primary insureds," but one insured is not seeking to sue the other and have coverage. Instead, plaintiff has collected workers' compensation from the insured, the corporation (his employer). He now has sued and obtained judgment against the alleged insured vendor; and this suit is to collect on the insurance policy furnishing liability coverage to the vendor. Clearly, these cases differ on their facts from the case sub judice.

2. Policy No. GLA918157, insuring "Vendors while cutting wood for Jones Wood & Timber Corporation but solely for Coverages A & B, Premises — Operations." Clearly in defining the term insured, here named, being one or more entities, the "insurance provided applied separately to each insured against whom claim is made or suit is brought . . ." Consequently, the policy stands as if any number of policies were written covering each of the insureds separately, not necessarily as a group, but because of the payment of premiums the insureds, while separately named, have been covered under one policy. Further, the exclusion clause of this policy, while clearly having double coverage for workers' compensation and damages claimed against any one insured, they do not bar it as to the other insured. Defendant paid workers' compensation to the plaintiff for the insured corporation. But it is now sued not by Rowe (plaintiff) as an employee of that corporation, and not as an employee of Johnson (which he was not) but to collect the judgment he obtained against Johnson in a court of law, for which liability Johnson was allegedly insured by the defendant insurer.

Various and sundry cases have been cited of other jurisdictions to support the severability clause, but as shown in Division 1 (d), our own decisions are inapposite on their facts; for clearly this case did not involve a suit by and between the insureds, but was one

by a plaintiff who collected workers' compensation from his employer/insurer, and then obtained a valid judgment against another who was insured by the same insurer for liability as the insurance afforded "applies separately to each insured against whom claim is made or suit is brought."

3. Our next consideration of this case is whether or not the insurer in the liability suit against its alleged insured was properly notified of the suit, or Johnson as an additional insured had to make an election of coverage, or if there was a waiver by the insurer here.

First of all, Johnson was not an additional insured under the policy, but as claimed, yet to be decided as a matter of law and fact, Johnson was a primary insured under the policy as an alleged vendor. This issue remains for decision. He was not as contended by an affiant for the insurer an additional insured required to make an election of coverage under the policy. Further, this affiant only speaks of his knowledge of the case, and clearly the affidavit of the opposing party's counsel discloses that he had filed "a courtesy copy of the suit" with the defendant insurer and talked by telephone to a vice president in charge of claims of the insurer, both before filing and within 30 days after filing same in court. This affiant added that the vice president in charge of claims had advised "that he believed no coverage existed" and the insurer "would not get involved in the suit." Also, the insurer's affiant by affidavit discloses that defendant was at all times well aware of the suit against Johnson.

The key question is not as to who gave notice of the lawsuit and claim so long as notice is given in a reasonable and timely manner. In *Stonewall Ins. Co. v. Farone,* 129 Ga. App. 471, 474 (199 SE2d 852), this court has approved the view that "it makes no difference who gives the notice, so long as a reasonable and timely notice is given the company and . . . [the insurer] . . . has actual knowledge of the pendency of a claim or suit." There is no doubt from the evidence here in the record that the defendant was fully aware of the facts and circumstances surrounding the damage suit and had investigated same thoroughly to determine its liability under its insurance contract as to workers' compensation under its liability coverage, if any. See *Public Nat. Ins. Co. v. Wheat,* 100 Ga. App. 695 (5), 697 (112 SE2d 194).

Consequently, we are faced here with the issue of whether the insurer (defendant) breached the policy of insurance by refusing to defend Johnson and his estate by making a determination from its investigation that its protection did not extend to him, the insurer having agreed and obligated itself to defend any lawsuit under the terms of the policy. See in this connection *Liberty Mut. Ins. Co. v. Atlantic C. L. R. Co.,* 66 Ga. App. 826, 833-834 (2) (19 SE2d 377);

*Hanover Fire Ins. Co. of New York v. Scroggs,* 90 Ga. App. 539, 540 (3), 547 (83 SE2d 295).

There being evidence that the insurer had refused to consider Johnson as an insured, an issue of fact remains as to whether same constituted a waiver of the policy requirements as to notice, proof of loss, etc. There is some evidence that the defendant during its investigation had made a determination not to defend the lawsuit as to Johnson. As issues of material fact remain for determination by a jury, the trial court erred in granting summary judgment.

*Judgment reversed. Quillian, C. J., and Pope, J., concur.*

DECIDED MARCH 19, 1981 —
REHEARING DENIED APRIL 1, 1981.

*Joseph R. Cullens, John O. Moore,* for appellant.
*Samuel P. Pierce, Jr.,* for appellee.