## A07A0807. BEN FARMER REALTY, INC. v. OWENS.
(649 SE2d 771)

RUFFIN, Judge.

Ben Farmer Realty, Inc. appeals the trial court's denial of its motion for summary judgment and grant of Darren Owens's motion for summary judgment. For reasons that follow, we reverse.

We review a trial court's ruling on a motion for summary judgment de novo, construing the evidence and all inferences and conclusions drawn from it in favor of the nonmoving party.[1] "Summary judgment is proper only when no [genuine] issue of material fact exists and the moving party is entitled to judgment as a matter of law."[2] Here, the material facts are not in dispute. The record demonstrates that on September 26, 2004, Owens and Farmer Realty entered into an "Exclusive Seller Listing Agreement" for Farmer Realty to market and attempt to sell Owens's house on Tybee Island.[3] The Agreement provided that Owens granted Farmer Realty "the exclusive right and privilege as the Agent of [Owens] to show and offer for sale" the house. It stated that "[t]he term of this Agreement shall begin on Sept. 26, 2004 and shall continue through April 15, 2005."

---

[1] See *Simpson v. Infinity Select Ins. Co.*, 269 Ga. App. 679, 681 (605 SE2d 39) (2004).

[2] (Punctuation omitted.) Id.

[3] This is a form contract produced by the Georgia Association of Realtors.

Farmer Realty's duties under the Agreement included using its "best efforts to procure a buyer ready, willing, and able to purchase the Property at a sales price of at least $479,900 (including commission) or any other price acceptable to [Owens]." Owens agreed to "cooperate with [Farmer Realty] to sell the Property to prospective buyers" and to pay Farmer Realty a commission of six percent of the purchase price of the Property "in the event that during the term of this Agreement . . . [Farmer Realty] procures a buyer ready, willing, and able to purchase the Property at the price described above." The Agreement further stated that "[t]he commission obligations set forth herein shall survive the termination of this Agreement."

Owens decided to take his house off the market because he believed it was "severely underpriced," and so notified Farmer Realty verbally and in writing in October 2004.[4] Farmer Realty removed the "for sale" sign and lockbox from the house, but informed Owens that the Agreement was still in force. By November 2004, both Owens and Farmer Realty had retained counsel to represent them. In March 2005, Farmer Realty presented Owens with an offer to purchase the house for $479,900 in cash with no contingencies or conditions, which was accompanied by a check for earnest money in the amount of $10,000. Owens did not accept the offer, and this action ensued.

Farmer Realty sued to recover its six percent commission of $28,794, which it contends it is owed because it produced a buyer ready, willing, and able to purchase the house for the asking price of $479,900 during the term of the Agreement. In his answer, Owens argued that he rescinded the Agreement in October 2004 and was no longer bound by it when the buyer was allegedly procured. The parties filed cross-motions for summary judgment, and the trial court ruled in favor of Owens. The trial court found that the Agreement was silent as to the right of the parties to terminate the contract prior to expiration; concluded that the Agreement was therefore governed by the Brokerage Relationships in Real Estate Transactions Act ("BRRETA"), OCGA § 10-6A-1 et seq., which allows for "authorized termination" of contracts but does not define an authorized termination; and applied general agency law, which provides for revocation of agency at the will of the principal, to define an authorized termination.

On appeal, Farmer Realty alleges that: (1) the trial court erred in finding that the Agreement is controlled by BRRETA; (2) the trial court erred in applying agency law to the Agreement; (3) OCGA § 10-6-33 bars Owens from terminating the Agreement; (4) the trial

---

[4] When Owens notified Farmer Realty that he wanted to take the house off the market, Farmer Realty suggested raising the asking price, but Owens declined to do so. Owens subsequently attempted to sell the house himself for $725,000.

court erred in its ruling on damages; and (5) Farmer Realty's summary judgment motion should have been granted.

1. This is a case of straightforward contract construction, and we are mindful that "[i]t is the duty of the courts to construe and enforce contracts as made, and not to make them for the parties."[5] Farmer Realty and amicus curiae Georgia Association of Realtors assert that, rather than being ambiguous as to the right of termination — as the trial court found — the Agreement was a contract for a definite term and not terminable at will, and thus Owens's attempt at early termination was unavailing. We agree.

Contract construction requires a three-step analysis.[6] First, the court must determine if the contract language at issue is clear and unambiguous.[7] "If a contract contains no ambiguity, the court enforces the agreement according to its clear terms, and the contract alone is looked to for its meaning."[8] If the contract is ambiguous, the court applies the rules of contract construction to resolve the ambiguity.[9] If the contract remains ambiguous after applying the rules of construction, the parties' intent then must be determined by a jury or other factfinder.[10]

"Ambiguity exists when a contract is uncertain of meaning, duplicitous, and indistinct[,] or when a word or phrase may be fairly understood in more than one way."[11] We conclude that the Agreement, which clearly stated that it was in effect from September 26, 2004 through April 15, 2005, was not ambiguous as to the right to terminate. It was for a specific term and provided no right to terminate the Agreement before the term expired. Furthermore, we need not consider the common practice in the real estate industry or the effect of this holding on it, as "a custom may not be shown to be a part of an unambiguous contract when the custom is inconsistent with or contrary to the express or necessarily implied terms of the contract."[12] Accordingly, because the Agreement is unambiguous, no further construction of the contract is necessary and the trial court

---

[5] (Punctuation omitted.) *Thornton v. Kumar*, 240 Ga. App. 897, 900 (525 SE2d 735) (1999); see *Fernandes v. Manugistics Atlanta*, 261 Ga. App. 429, 433 (1) (582 SE2d 499) (2003) ("Neither the trial court nor this Court is at liberty to rewrite or revise a contract under the guise of construing it.").

[6] See *Mitchell v. Cambridge Property Owners Assn.*, 276 Ga. App. 326, 327 (1) (623 SE2d 511) (2005).

[7] See id.

[8] *Hammer Corp. v. Wade*, 278 Ga. App. 214, 217 (1) (628 SE2d 638) (2006).

[9] See id.

[10] See id.

[11] *Sheridan v. Crown Capital Corp.*, 251 Ga. App. 314, 315 (1) (554 SE2d 296) (2001).

[12] *Wight v. Brown*, 77 Ga. App. 375, 378 (1) (48 SE2d 784) (1948).

erred in granting summary judgment to Owens and denying summary judgment to Farmer on this basis.[13]

2. Because of our holding in Division 1, we need not address Farmer Realty's enumerations of error regarding the trial court's application of BRRETA and general agency law in interpreting the contract.

3. Farmer Realty also alleges as error the trial court's holding that it "failed to offer any competent evidence of damages" because it did not prove that it had sustained any damages as of October 12, 2004, the date Owens attempted to terminate the Agreement. Farmer Realty asserts that it is entitled to damages in the full amount of its commission, as established in the Agreement, because it fulfilled all of its duties under the Agreement.

We have held that, where an employment contract is for a specific term, and makes no provision for early termination, a terminated employee is entitled to recover the wages he or she would have been paid during the remainder of the term.[14] And in cases involving similar real estate listing agreements, the broker's contracted-for commission was the appropriate measure of damages when a property was sold to a buyer procured by the broker.[15] Although the sale was not consummated in this case, Farmer Realty fulfilled its obligation under the contract "to procure a buyer ready, willing, and able to purchase the Property at a sales price of at least $479,900 (including commission)." This triggered Owens's obligation to pay Farmer Realty a six percent commission.[16] Thus, because the Agreement was not terminated and Farmer Realty fulfilled its obligation thereunder, the appropriate measure of damages is the commission provided for by the Agreement.[17]

*Judgment reversed. Blackburn, P. J., concurs. Bernes, J., concurs in the judgment only.*

---

[13] See *Archer v. Carson*, 213 Ga. App. 161, 163 (2) (444 SE2d 82) (1994).

[14] See *Mail Advertising Systems v. Shroka*, 249 Ga. App. 484, 487 (2) (548 SE2d 461) (2001); *ISS Intl. Svc. Systems v. Widmer*, 264 Ga. App. 55, 63 (5) (589 SE2d 820) (2003).

[15] See *Steel Magnolias Realty v. Bleakley*, 276 Ga. App. 155, 155-156 (622 SE2d 481) (2005); *Snipes v. Marcene P. Powell & Assoc.*, 273 Ga. App. 814, 817 (1) (a) (616 SE2d 152) (2005); *Goodman v. Frolik & Co.*, 233 Ga. App. 376, 377-378 (1) (504 SE2d 223) (1998); *O'Brien's Irish Pub v. Gerlew Holdings, Inc.*, 175 Ga. App. 162, 164-165 (2) (332 SE2d 920) (1985).

[16] We note that this comports with general agency law, which provides that "[a]n agent who shall have discharged his duty shall be entitled to his commission," and that a property broker's "commissions are earned when, during the agency, he finds a purchaser who is ready, able, and willing to buy and who actually offers to buy on the terms stipulated by the owner." OCGA §§ 10-6-31; 10-6-32.

[17] See *Goodman*, supra.

DECIDED JULY 5, 2007 —
RECONSIDERATION DENIED JULY 19, 2007 —

*Stanley M. Lefco*, for appellant.
*Savage, Turner, Pinson & Karsman, Brent J. Savage, Kathryn H. Pinckney*, for appellee.
*Weissman, Nowack, Curry & Wilco, Seth G. Weissman, Ned Blumenthal*, amici curiae.